**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
THOMASVILLE DIVISION**

| | | |
|---|---|---|
| TINA L. FREEMAN, | * | |
| | * | |
| Claimant, | * | |
| | * | |
| vs. | * | CASE NO.  6:05-CV-50 HL-GMF |
| | * | |
| JO ANNE B. BARNHART, | * | |
| COMMISSIONER OF | * | |
| SOCIAL SECURITY, | * | |
| | * | |
| Defendant. | * | SOCIAL SECURITY APPEAL |
| _____ | * | |

**REPORT AND RECOMMENDATION**

The Social Security Commissioner, by adoption of the Administrative Law Judge's determination, denied Claimant's application for social security disability benefits, finding that she was not disabled within the meaning of the Social Security Act and Regulations. Claimant contends that the Commissioner's decision was in error, and she seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

**LEGAL STANDARDS**

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S. Ct. 1420,

28 L. Ed. 2d 842 (1971). The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court may not decide facts, reweigh evidence, nor substitute its judgment for that of the Commissioner.[1] *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980). The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth v. Heckler*, 703 F.2d at1239. However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.* The initial burden of establishing disability is on the claimant. *Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973). The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981).

A claimant seeking Social Security disability benefits must demonstrate that she suffers from an impairment that prevents her from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1). In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act. 20 C.F.R. § 404.1 et seq.

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). See also *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

Under the regulations, the Commissioner determines if a claimant is disabled by a five-step procedure. 20 C.F.R. § 404.1520, Appendix 1, Part 404. First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Next, the Commissioner determines whether the claimant's impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. Finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work. In arriving at a decision, the Commissioner must consider the combined effect of all the alleged impairments, without regard to whether each, if considered separately, would be disabling. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal. *Id.*

### ISSUES

I.   **Whether the ALJ failed to weigh all relevant evidence in his residual functional capacity assessment?**

II.  **Whether the ALJ improperly rejected the opinion of Claimant's treating physician and failed to comply with 20 C.F.R. §404.1520a?**

III. **Whether the ALJ failed to make specific findings regarding Claimant's obesity in combination with other impairments and failed to give specific reasons for his credibility finding as to Claimant?**

## Administrative Proceedings

Claimant filed an application for social security disability benefits on January 8, 2003. (R-63-65). Her application was denied initially and upon reconsideration. The Claimant then requested a hearing in front of an administrative law judge (ALJ) which was held on October 19, 2004. (R-451-488). Subsequent to the hearing, the ALJ found that the Claimant was not disabled in a decision dated February 25, 2005. (R-12-28). Claimant requested review of the ALJ's finding by the Appeals Council and on August 17, 2005, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (R-6-9).

## Statement of Facts and Evidence

The claimant alleges she is disabled due to obesity, knee pain, left hand and elbow pain, arthritis in her back and legs, diabetes, cardiac impairment, and shortness of breath. (Claimant's Brief, p.1). After examining the medical records the ALJ determined that the claimant had severe impairments consisting of arthritis, a right knee impairment, and obesity. (R-19). The ALJ found, however, that those impairments, either alone or in combination, did not meet or equal any of the relevant Listings. (R-28). The ALJ found that Claimant had the residual functional capacity for light work, with the following limitations: no climbing of ladders, ropes or scaffolds; for no more than 2 ½ hours per eight-hour workday Claimant can individually climb ramps/stairs, balance, stoop, kneel crouch, and crawl; and Claimant should avoid concentrated exposure to hazardous work environments where a loss of postural capacity might result in her endangering herself or others. *Id*. The ALJ further found that

Claimant could perform her past relevant work as a cake icer and as a greeter. *Id*.

**I.      Whether the ALJ failed to weigh all relevant evidence in his residual functional capacity assessment?**

Claimant argues that the ALJ made only "a vague finding that [Claimant] can perform light category work activity, with insignificant qualification." (Claimant's Brief, p.9-10). Specifically, Claimant argues that the ALJ failed to make a "finding regarding how long [Claimant] can stand, walk, or sit, or whether she needs to alternate positions – or how frequently, and he failed to reject or evaluate evidence that Freeman has almost no ability to stand and walk due to her knee arthritis coupled with obesity." (Claimant's Brief, p.10). Claimant argues that the ALJ failed to comply with SSR 96-8p, and claims that the ALJ's assessment did not include a narrative discussion describing how the evidence supports each conclusion, and did not cite specific facts and non-medical evidence. (Claimant's Brief, p.12). Claimant further argues that there is no evidence in the record to support the ALJ's statement that Dr. Walter based his opinion that Claimant needed surgery solely on Claimant's statements. (Claimant's Brief, p.11).

Contrary to Claimant's argument, the ALJ did discuss Claimant's functional limitations or restrictions, including the functions listed in 20 C.F.R. §404.15445(b), (c), and (d) and §416.945(b), (c) and (d). The ALJ made specific findings as to Claimant's ability to sit, stand, walk, lift, and carry. (R-25, 28). Additionally, the ALJ discussed Claimant's medical record in relation to her knee impairment and found that no objective medical evidence supported Dr. Walter's opinion. (R-26). In his Findings, the ALJ stated:

5

While the Claimant is obese and she has arthritis of the right knee, and these impairments can reasonably be expected to limit the claimant to standing and walking for less than 8 hours per day, and can be expected to cause some postural limitations; the evidence does not convince the undersigned that her ability to stand/walk, bend, crawl, squat, or climb, etc. is restricted to the degree described by Mr. Folsom. Therefore, his assessment is assigned no evidentiary value.

The claimant underwent surgery on her right knee in February of 2002, but she subsequently participated in physical therapy, and was able to perform all of her activities of daily living by July 2002 (although she used a cart in the grocery store to limit walking) (Exhibit 8/9). in November 2002 Dr. Goss opined that she had reached maximum medical improvement, and that she could only do sedentary work (Exhibits 15F/2 and 15 F/3), but Dr. Jacobson's examination in January of 2003 (Exhibit 12F) and subsequent examinations from April of 2003 (Exhibit 20F) and in May of 2003 (Exhibit 25F) did not reveal a right knee impairment that would restrict her to only sedentary work activities. Although the claimant walks with a cane, the medical evidence does not indicate that this was deemed medically necessary. In July of 2003 the claimant again underwent right knee surgery but she underwent physical therapy post-operatively and did well. In fact, by September 2003, which was within 12 months of her alleged onset date of disability, she had a normal range of motion of the right knee and no effusion (Exhibit 25F/24). In April of 2004 she again underwent right knee surgery, but upon follow-up, her physical examinations and x-rays indicated that her knee was stable and that her motor strength was intact (Exhibit 25F).

While she required a cane to walk in July of 2002, a physical examination by Dr. Goss in August of 2002 did not reveal a left lower extremity impairment that would severely restrict the claimant's ability to stand/walk. While he opined that the claimant could perform only sedentary work in August of 2002, her MRI scan revealed no significant change and Dr. Jacobson's examination of her right knee in January of 2003 did not show signs of a severe right knee impairment. Moreover, right knee x-rays taken in April of 2003 showed only mild osteoarthritis

6

> involving all three compartments of the right knee, and other mild abnormalities and physical examination of her extremities showed no laxity, edema, effusion or focal deficit. (Exhibit 20F).
>
> Although Dr. Walter suggested that the claimant undergo a total knee replacement on October 20, 2004, it is clear from his report that his opinion in this regard was based on the claimant's own allegations of severe pain and that she could not live like this, rather than upon any laboratory findings or clinical evidence. While the timing of this visit to Dr. Walter, which was just one day after the hearing before the undersigned on October 19, 2004, could be coincidental, it is also possible that her allegations of pain were exaggerated for material gain.

(R-25-26). Thereafter the ALJ determined that Claimant did not need a cane to walk. (R-26). The ALJ also determined that Claimant's physical therapist's assessment of Claimant's functional limitations was unsupported by the record and had no evidentiary value. (R-25-6). "[A]lthough the ALJ's decision may not be as thorough as [Claimant] may have wished, requiring the ALJ to make additional findings would serve no purpose in light of [Claimant's] failure to offer evidence to support more detailed findings." *Id*. See *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (remand not necessary unless the record reveals evidentiary gaps that result in unfairness or clear prejudice); *Ware v. Schweikre*, 651 F.2d 408, 412 (5th Cir. 1981) (remand a "wasteful corrective exercise" when no further findings could be made that would alter the ALJ's decision given the record as a whole); see also *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000) ("a remand is not essential if it will amount to no more than an empty exercise"); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (no principle of administrative law or common sense requires a

remand in quest of a perfect opinion unless there is a reason to believe that the remand might lead to a different result). The ALJ correctly judged Claimant's credibility and correctly discounted Dr. Walter's opinion because it was not based on objective testing or examination, but was instead based on Claimant's subjective complaints. Thus it is clear that the ALJ weighed all of the relevant evidence in his RFC assessment.

**II.     Whether the ALJ improperly rejected the opinion of Claimant's treating physician and failed to comply with 20 C.F.R. §404.1520a?**

The ALJ found that Claimant's alleged mental impairments were not severe. (R-24-25). Claimant argues that the ALJ improperly rejected the opinion of Claimant's treating physician, Dr. William Battles. (Claimant's Brief, p.13). Claimant argues that the ALJ cited no medical evidence to contradict Dr. Battles and that the ALJ improperly substituted his own judgment for that of Claimant's treating physician. *Id*.

Claimant's medical records indicate that she sought mental health treatment from March of 2004 until August of that same year. (R-401-419). The records indicate that Claimant was either seen by William Battles, M.D., or Joseph Houston, M.D. *Id*. Claimant's initial appointment was March 8, 2004. (R-407). On that date, Claimant's chief complaint was "[d]epression, secondary to the pain in [her] leg." *Id*. Regarding Claimant's history of present illness, Dr. Battles noted that "approximately one and a half years ago she became more depressed and despondent and began having problems with her sleep pattern. She states that she is having difficulty in both the initiation and maintenance of sleep. Her appetite has increased and she has gained a significant amount of weight. She continues to

have pain in her right knee and has been on Hydrocodone, Bextra, and Baclofen." *Id.* Dr. Battles observed that Claimant was:

> "[A]lert, cooperative, and responds appropriately. Speech pattern is normal in rate, tone, and volume. There is no evidence of looseness of association or flight of ideas. Patient denies any suicidal or homicidal ideations. There is no evidence of delusions or hallucinations. Mood is depressed and affect is labile. The patient cried several times during the interview. Insight and judgment are very limited.

(R-408). Dr. Battles' Axis I diagnosis was major depression, dysthymia and anxiety. *Id.* Dr. Battle determined that Claimant's GAF was "[p]resently 60/60 Past." *Id.* Dr. Battle prescribed two medications, ordered a re-evaluation in one month and recommended a treatment plan which included diagnostic, nursing and physician assessments, as well as individual counseling. *Id.* After these assessments, it was determined that the following needed to be addressed in the treatment of Claimant: symptoms of major depression, fatigue, feelings of worthlessness and poor appetite/sleep. (R-416). These treatment goals, however, would not be addressed until Claimant recovered from her upcoming knee surgery. *Id.* The projected date of Claimant's discharge from mental health treatment was listed as August 9, 2004. (R-417). On April 5, 2004, Dr. Battles noted Claimant's diagnosis of major depression and anxiety, and noted that Claimant was stable and improved, but remained symptomatic. (R-405). At this appointment Claimant complained of knee pain and discussed her upcoming surgery. *Id.* Claimant reported problematic sleep. *Id.* Dr. Battles noted that Claimant was "alert, active, and responds appropriately to questions. There is no evidence of suicidal or homicidal ideations and no evidence of overt psychosis." *Id.* Dr.

Battles diagnosed Claimant with major depression, anxiety, and dysthymia. *Id.* Claimant was prescribed a low dose of Seroquel and the Trazadone was discontinued. *Id.* On May 3, 2004, Dr. Houston noted that Claimant said "she's been getting along fairly well but has had some trouble with her knee. . . . She has been doing well, as far as depression is concerned, except she says that she is not sleeping well at night." (R-404). Claimant's medication was adjusted and she was told to return in four weeks. *Id.* On June 7, 2004, Claimant saw Dr. Houston. (R-403). Dr. Houston noted that Claimant said "she is getting along well on Effexor XR 150 mg AM and Seroquel 200 mg she takes at night." *Id.* Claimant stated that her knee was still bothering her and that she was afraid that she might have to have a knee replacement at a later date; however, no specific complaints were made or noted dealing with Claimant's mental health or functioning. *Id.* On July 26, 2004, Claimant was seen at the Brooks County Mental Health Clinic by Dr. Houston. (R-402). On that date, one of Claimant's medications was reduced. *Id.* At her last appointment of record, August 23rd, 2004, Dr. Battles stated that Claimant's "depression has improved and it is stable, but she remains somewhat symptomatic and her sleep pattern is that of a person with depression." (R-401). At said appointment, one of Claimant's medications was increased, and Claimant was scheduled to return for re-evaluation in three months. *Id.*

The ALJ determined that there was "no objective evidence to support a finding that claimant's mental impairments significantly affect her ability to work. . . ," and therefore found that said mental impairments were non-severe pursuant to 20 C.F.R. 404-1521(a) and 416.921(a). (R-25).

It is well settled that the opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding it. *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985). A treating physician's report may be discounted when it is not accompanied by objective medical evidence or when it is conclusory. *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). The ALJ can also reject the opinion of any physician when the evidence supports a contrary conclusion or when it is contrary to other statements or reports of the physician. *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991). *See also Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984). The weight afforded a medical source's opinion on the issue(s) of the nature and severity of a claimant's impairments depends upon; the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the evidence the medical source submitted to support an opinion, the consistency of the opinion with the record as a whole, the specialty of the medical source and other factors. 20 C.F.R. §416.927(d).

Code section 416.905 provides the basic definition of disability for adults seeking supplemental security income. 20 C.F.R. § 416.905. Disability is defined as:

> (a) . . . the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death **or which has lasted or can be expected to last for a continuous period of not less than 12 months**.

*Id.* (emphasis added). This is called the "duration requirement" and it is a basic element that Claimant must prove before she can be declared disabled. 20 C.F.R. §§ 416.905 and 416.909.

In March 2004, Claimant stated that she had been depressed and having symptoms for a year. (R-407-408). Although Claimant had upwards of fifteen appointments with several different physicians, there is no mention of depression, dysthymia or anxiety in the medical evidence of record from January of 2003 to February of 2004. (R-225, 229, 233-4, 235, 309, 311, 312, 314, 336, 337, 339, 341, 356, 378-384). In fact, on March 3, 2003, Claimant had an appointment with Dr. S. Terry Persaud of Premier Pain Management P.A., and Claimant specifically denied any psychiatric symptoms. (R-275-6). Additionally, Claimant was seen by Dr. Sandra B. Reed at Shaw Center for Women's Health on April 22, 2003, for evaluation of post-operative myomectomy and stated that she had no other problems or complaints. (R-337). On June 2, 2003, Dr. Persaud noted that Claimant was enthusiastic about her weight loss, but did not note depression. (R-357). Furthermore, when complaining of depression Claimant informed Dr. Battles that "approximately one and one-half years ago she became more depressed and despondent and began having problems with her sleep pattern. She [stated] that she [was] having difficulty in both initiation and maintenance of sleep." (R-407). The medical evidence of record for that time period, however, reflects that the disturbance of Claimant's sleep pattern was medically attributed to sleep apnea[2]. (R-229, 233-6).

The ALJ provided good cause for rejecting Dr. Battle's diagnosis and GAF score of Present 60/60 Past. As previously shown, the medical evidence of record reflects no prior

---

[2] Claimant's sleep study using a nasal CPAP, which Claimant tolerated well, showed significant improvement in her sleep. (R-234). Dr. Craig E. Wolff conducted the sleep study and recommended that Claimant lose weight and consider treatment with the nasal CPAP. *Id*.

documentation of depression or the symptoms of depression, though Claimant stated it had been present for a year and a half. Additionally, Dr. Battles based his GAF score of 60 Past on Claimant's own statements with no medical testing or evidence to support said score. (R-407). The record indicates that Claimant was seen by Dr. Battle or Dr. Houston for metal health treatment once a month for six months and then advised to return for a re-evaluation in three months. (R-401). Other than Claimant's statement to Dr. Battles and her testimony at the administrative hearing, no evidence in the record indicates that Claimant had previously been depressed or that her depression would endure, for the requisite twelve months. (R-407, 475-6). It is the responsibility of the ALJ to determine if an impairment is severe under the disability guidelines. That determination must be made using the definitions given in the regulations. Those regulations require that an impairment must either be expected to cause death, have lasted twelve months or be expected to last twelve months, to be even be considered an "impairment" for purposes of disability benefits. 20 C.F.R. §§ 416.905(a) and 416.909. The burden is on Claimant to prove that she has an impairment, that includes the duration requirement. Claimant has failed to meet that burden. The ALJ clearly discussed and weighed the mental health evidence from Dr. Battles and Dr. Houston. (R-24-25). The medical record supports the decision of the ALJ.

Claimant also argues that her case should be reversed because the ALJ "failed to comply with the requirement that he evaluate mental impairments using the special procedure set out in 20 C.F.R. §404.1520a. (Claimant's Brief, p.13-15).

*Moore v. Barnhart* states that "[W]here a Claimant has presented a colorable claim

of mental impairment, the social security regulations require the ALJ to complete a PRTF, append it to the decision, **or** incorporate its mode of analysis into his findings and conclusions.  Failure to do so requires remand." 405 F.3d 1208, 1214 (11th Cir. 2005) (emphasis added).  The court found that an ALJ is required to complete the PRTF or incorporate his analysis of the effect of her mental impairment on the four functional areas of: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id; See also* 20 C.F.R. § 404.1520a-(c).  Because the *Moore* ALJ failed to analyze two of the functional areas, social functioning and episodes of decompensation, remand was required.

An ALJ is required to address these four areas of functioning using the "technique" required under 20 C.F.R. 404.1520a.  In Claimants' case, although the ALJ did not complete a PRTF, he did analyze and incorporate the PRTF's mode of analysis into his decision.  In his findings the ALJ stated:

> The evidence does not indicate that the claimant's mental impairments cause more than mild limitations in her performance of activities of daily living.  Although the claimant was assigned a GAF rating of 60, the evidence, including Dr. Battles' treatment records, do not demonstrate that the claimant had any limitations in the areas of social functioning or concentration, persistence, or pace, and there is no evidence of any episodes of decompensation.

(R-24-25).

Although Dr. Battles determined that Claimant had a Global Assessment of Functioning (GAF) score of 60, said diagnosis indicates only "moderate symptoms (e.g., flat

affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers)." *DSM IV*, p.34.  Social Security Regulation 96-7p clearly states that no symptom or combination of symptoms can be the basis for a finding of disability unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable mental impairment that could reasonably be expected to produce the symptoms.  As previously discussed, Claimant's "past" GAF score of 60 was based only on the statement's of Claimant, not objective medical testing.  Moreover, other than Claimant's statement, there is no evidence that her mental health impairments met the duration requirement.  The "present" GAF score represented Dr. Battles' assessment of Claimant's mental health state in March of 2004.  Additionally, the Sixth Circuit has found that a diagnosis says nothing about the severity of a claimant's condition.  See *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (citing *Foster v. Bowen*, 853 F.2d 483, 488 (6th Cir. 1988)); *Young v. Secretary of Health and Human Services*, 925 F.2d 146, 151 (6th Cir. 1990) (finding a claimant must do more to establish a disabling mental impairment than merely show a diagnosis of a dysthymic disorder).  As the record shows, Claimant began to show improvement within a month and was considered stable.  (R-405).  Furthermore, Claimant's conservative treatment for her alleged mental impairments is also substantial evidence to support an ALJ's findings of "not disabled."  See *Wolfe v. Chater*, 86 F.3d 1072 (11th Cir. 1995).  Therefore, Claimant's argument is without merit.

**III.     Whether the ALJ failed to make specific findings regarding Claimant's obesity**

**in combination with other impairments and failed to give specific reasons for his credibility as to Claimant?**

Claimant argues that the ALJ failed to evaluate Claimant's obesity in combination with her other impairments. In addition, Claimant argues that the ALJ failed to give specific reasons for finding that Claimant's allegations regarding her limitations were not totally credible.

Despite the elimination of Listing 9.09, obesity is still a factor for disability determination according to SSR 02-1p. That regulation added language to the prefaces of musculoskeletal, respiratory and cardiovascular body system listings, "to provide guidance about the potential effects obesity has in causing or contributing to impairments of those body systems." *See* Listing Sections 1.00, 3.00, 4.00. The regulation also instructs that obesity can be considered at other steps of the sequential evaluation process including the assessment of a residual functional capacity.

While discussing Claimant's alleged low back and left lower extremity pain, the ALJ noted that Dr. Persaud spoke to Claimant's obesity. Dr. Persaud stated that if claimant did not engage in meaningful weight reduction, he suspected that she would have a gradual escalation of complications attributed to her body mass and diabetes. (R-23, 277). Also, while discussing Claimant's arthritis/right knee impairment, the ALJ quoted Dr. Goss who stated, "[t]he problem still is that we haven't been able to accomplish anything in the way of weight loss to any significant degree, and I need to have her make a major change in this to gain on this whole situation." (R-18). The ALJ also noted that Claimant continued to be

16

counseled to lose weight by her doctors. (R-19). After discussing Claimant's arthritis and right knee impairment, the ALJ determined that those conditions as well as Claimant's obesity were "severe" impairments. The record clearly shows that the ALJ consider Claimant's obesity in combination with her other impairments and discussed them in detail. (R-16-27).

The burden is on Claimant to present evidence of any claimed impairment and/or any combination of impairments. Claimant failed to meet her burden of showing how her obesity affected her other conditions, so as to meet or equal a listing. Regulation 00-3p states, "We will not make assumptions about the severity of functional effects of obesity combined with other impairments. Obesity in combination with other impairments may or may not increase the severity or functional limitations of other impairments." Claimant did not present evidence that her obesity increased the severity of other impairments so that they met or equaled a listing, therefore, there was no error as to this claim.

Claimant also argues that the ALJ failed to make specific findings as to Claimant's credibility. In making his Residual Functional Capacity assessment, the ALJ stated:

> While the undersigned does not doubt that, due to her weight and arthritis of the right knee, the claimant continues to experience some right knee pain and some effusion, she does not have a medically determinable right knee impairment that could reasonably be expected to cause the severe pain and functional limitations she alleges. . . . Nor does the totality of the evidence support the claimant's allegations, including her testimony that she needs a cane to walk, that she had difficulty sleeping at night, difficulty concentrating, and that she could not lift her 16 pound grand-daughter.

17

(R-26). The ALJ based his decision on the evidence of record, including the medical records in evidence, the assessments and evaluations of state agency consultants, as well as the claims of pain and limitations as subjectively alleged by the Claimant which, based on the medical evidence of record, he found less than fully credible. (R-26, 28).

Although the claimant argues to the contrary, the ALJ clearly supported his credibility assessment of the claimant in his Findings. As was recently held in this circuit in *Dyer v. Barnhart*, 395 F.3d 1206 (11th Cir. 2005):

> Substantial evidence is something "more than a mere scintilla, but less than a preponderance." *Hale v. Bowen,* 831 F.2d 1007, 1011 (11th Cir.1987) "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart,* 357 F.3d 1232, 1240 n. 8 (11th Cir.2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.] 357 F.3d at 1240 n. 8.

Additionally, at the end of the argument Claimant simply states "[t]he ALJ decision ignored the effec (sic) her back pain and depression, impairments which he found to be non-severe." (Claimant's Brief, p.15). The argument seems to be that the ALJ ignored the effects of Claimant's non-severe impairments of back pain and depression. This unclear, unsupported statement can hardly be considered an argument, however, it will be addressed briefly. The ALJ dedicated a page and a half to Claimant's alleged low back impairment, including her pain, and how such effected Claimant. (R-22-4). Said discussion included multiple references to Claimant's obesity, diabetes, knee impairments, etc. in conjunction with one another and their effects on each other. *Id.* The effects of Claimant's alleged

18

mental impairment was discussed at length above. After thoroughly discussing Claimant's multiple alleged impairments, the ALJ determined:

> The evidence supports the conclusion that at all relevant times the claimant retained the ability to meet the basic mental demands of competitive, remunerative, unskilled work including the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, co-workers, and usual work situations; and to deal with changes in a routine work setting. There is no evidence of a substantial loss of ability to meet any of the basic physical and/or mental work-related activities that would thereby severely limit her potential occupational base.

(R-26-7). The ALJ clearly addressed the combined effects of Claimant's impairments and thus, this argument is without merit.

## CONCLUSION

In reviewing the record, no evidence of error is found to substantiate Claimant's contention that the ALJ improperly assessed Claimant's residual functional capacity, improperly discredited Dr. Battles, failed to assess Claimant's mental impairment as required by the regulations, improperly discredited Claimant or failed to consider the impact of Claimant's obesity in conjunction with Claimant's other impairments. The ALJ did not err in finding that the claimant had the RFC to perform light work with the aforementioned limitations, nor that Claimant could perform her past relevant work as a cake icer or greeter. The decision of the Commissioner is supported by substantial evidence. Furthermore, the record fails to reveal evidence of the ALJ acting outside of his judicial role in determining the extent of the Claimant's disability.

**WHEREFORE**, it is the recommendation to the United States District Judge that the decision of the defendant Commissioner of Social Security be **AFFIRMED**.

Pursuant to 28 U.S.C. § 636(b)(1), Claimant may serve and file written objections to this recommendation with the UNITED STATES DISTRICT JUDGE within ten (10) days after being served a copy of this recommendation.

THIS the 10th day of July, 2006.

                                                      S/ G. MALLON FAIRCLOTH  
                                                    UNITED STATES MAGISTRATE JUDGE

mZc